1  I.    **Background**[2]

2        On September 13, 2018, a jury found Lopez guilty of Attempted Enticement of a Minor,

3  in violation of 18 U.S.C. §§ 2422(b) and 2, and Transfer of Obscenity to a Minor, in violation of

4  18 U.S.C. §§ 1470 and 2. *See* J. at 1, ECF No. 76; *see also* Mins., ECF No. 57. Thereafter, Lopez

5  was sentenced to concurrent 120-month terms of imprisonment followed by 36 months of

6  supervised release. J. at 2-3, ECF No. 76.

7        Lopez filed a notice of appeal on January 18, 2019. ECF No. 79. The Ninth Circuit

8  affirmed Lopez's conviction on July 6, 2021. *United States v. Lopez*, 4 F.4th 706 (9th Cir. 2021).

9  In relevant part, the Ninth Circuit held that the district court abused its discretion in introducing

10  excerpts of Lopez's interrogation video but found it to be harmless error given the overwhelming

11  evidence introduced by the Government. *Id.* at 717-18. The Ninth Circuit also rejected Lopez's

12  arguments regarding 18 U.S.C. § 2422 and the offense jury instructions provided. *Id.* at 718-32.

13  The Ninth Circuit issued its Mandate on December 22, 2021. Mandate, ECF No. 100. Lopez then

14  filed a petition for writ of certiorari to the Supreme Court on April 12, 2022, and his petition was

15  denied on October 3, 2022. *Lopez v. United States*, 143 S. Ct. 121 (2022).

16        On October 16, 2023, the court received Lopez's Motion Under 28 U.S.C. § 2255 to

17  Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody ("Motion to Vacate").

18  ECF No. 101. Therein:

19            Defendant argues that (1) defense counsel's performance at trial was
20            constitutionally deficient; (2) the Government violated his Sixth
              Amendment rights by interfering with his "compulsory process of
21            witnesses for his benefit and his Fifth Amendment right to choose to
              testify[;]" (3) he was "denied due process" because he was convicted of
22            offenses outside his statute of conviction; (4) the indictment presented to
              the jury at trial was "broadened from that charged by the Grand Jury,"
              which violated his due process; (5) the OSI investigation was conducted

23

24  _____
[2] Page citations are based on the CM/ECF page numbering system in Lopez's criminal case, Criminal Case No. 17-00053. Lopez's related civil case, *Wilfredo Lee Lopez v. United States*, Civil Case No. 23-00022, was opened as a matter of procedure and the entries mirror those docketed in his criminal case.

1  "in violation of the Electronic Communication Privacy Act and other
2  laws[;]" (6) the Government withheld Brady materials violating his due
   process rights; and (7) his Fifth Amendment Right to choose not to
3  testify was impeded by the court's decision to show a "misleading
   interrogation video" and defense counsel's "failure to procure
4  corroborating evidence and witnesses" with respect to his claims of
   innocence.

5  *See* Decision & Order at 2-3, ECF No. 102 (quoting Mot. at 12-25, ECF No. 101). Lopez

6  requested that his sentence be vacated, or his indictment be dismissed with prejudice. *See* Mot. at

7  11, ECF No. 101. Although the court did not receive Lopez's Motion to Vacate until October 16,

8  2023, he signed under penalty of perjury that he placed it in the prison mailing system on

9  October 3, 2023. *Id.* The envelope contained twenty Forever Stamps with a U.S. Postal Service

10 sticker that indicated "U.S. Postage Paid" and "October 10, 2023." *Id.* at 26. There is a separate,

11 torn label that includes the date October 7, 2023. *Id.*

12      On June 4, 2024, the court denied Lopez's Motion to Vacate on the basis that it was

13 untimely under 28 U.S.C. § 2255(f).[3] Decision & Order at 3-5, ECF No. 102.

14      Defendant's judgment became final on October 3, 2022, the day the
15      Supreme Court denied Defendant's petition for certiorari. *Clay*[ *v. United
        States*], 537 U.S. [522,] 524 [(2003)]. Defendant filed the instant Motion
16      on October 16, 2023, over a year after his judgment of conviction
        became final. Mot., ECF No. 101. Defendant's Motion is untimely under
17      28 U.S.C. § 2255(f)(1).

18 *Id.* at 4.

19      On July 1, 2024, Lopez filed the Motion to Vacate Judgment Under Rules 59(e) and

20 60(b)(1) ("Motion for Reconsideration"), requesting that the court "vacate its judgment denying

21 Lopez's 28 U.S.C. § 2255 motion" because of an "erroneous factual determination that his

22

23 _____
   [3] The court attempted to provide notice of the decision and order to Lopez, but received notice the mail was returned
24 undeliverable on June 24, 2024. *See* ECF Nos. 103-05. The court has record of separate notice being delivered on
   June 25, 2024.

1  motion was untimely."[4] Mot., ECF No. 107. Lopez argued that the court mistakenly used

2  October 16, 2023, as the date when he filed the instant motion when, instead, the court should

3  have referred to October 3, 2023, which is when he delivered the filing to the prison mailing

4  authorities. *Id.* at 2. Lopez also argued that the court improperly invoked the time bar without

5  providing the parties fair notice or an opportunity to present their positions. *Id.* at 2-3.

6        Upon consideration of Lopez's Motion for Reconsideration, the court provided him with

7  an opportunity to address the issue of whether his Motion to Vacate was timely. *See* Order, ECF

8  No. 110. Lopez filed his response on September 30, 2024, and the court provided the

9  Government an opportunity to respond.[5] Def.'s Resp., ECF No 111;[6] Order, ECF No. 113. The

10  United States filed its response on October 24, 2024. Gov't Resp., ECF No. 114. The parties

11  agree that Lopez's Motion to Vacate was timely under the prison mailbox rule. *See id.* at 2-4;

12  Def.'s Resp. at 1-2, ECF No. 111.

13  **II.   Motion for Reconsideration**

14        **A.  Standard of Review**

15        Lopez moves the court to "vacate its judgment denying Lopez's 28 U.S.C. § 2255 motion

16  on the basis of this court making an erroneous factual determination that his motion was

17  untimely." Mot. at 1, ECF No. 107. To do so, he invokes Federal Rules of Civil Procedure 59(e)

18  and 60(b)(1). *Id.* Although Lopez requests that the court "vacate" its decision, the motion is

19  styled as one to "alter or amend"—or even more broadly, to reconsider—the court's June 4, 2024

20  Decision and Order. *See* Mot., ECF No. 107. Accordingly, the court will construe Lopez's

21  

22  [4] The court received Lopez's filing on July 1, 2024, but he mailed the document on June 26, 2024. *See* Mot. at 3-4, ECF No. 107.

23  [5] The court also provided Lopez an opportunity to reply, but he did not. *See* Order, ECF No. 113.

24  [6] The court received a duplicate of Lopez's Response on October 1, 2024. *See* ECF No. 112. This Decision and Order refers to ECF No. 111 throughout for consistency.

1   motion as one for reconsideration, or to "alter or amend," under Rule 59(e) or 60(b).

2       The difference between Rules 59(e) and 60(b) is "largely one of timing rather than

3   substance." *See, e.g.*, *Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp.*, 248 F.3d 892,

4   898-89 (9th Cir. 2001); *Loyer v. Covello*, No. 8:21-cv-00233-PSG-JC, 2022 WL 19828974, at *1

5   n.2 (C.D. Cal. Jan. 7, 2022). Motions to alter or amend a judgment under Rule 59(e) must be

6   filed within twenty-eight days of entry of judgment. *Am. Ironworks*, 248 F.3d at 898-99; FED. R.

7   CIV. P. 59(b). Otherwise, the motion is treated as one for relief from a judgment or order under

8   Rule 60(b), which "must be made within a reasonable time." *Am. Ironworks*, 248 F.3d at 898-99;

9   *see also* FED. R. CIV. P. 60(c)(1). Lopez's Motion for Reconsideration was filed within twenty-

10   eight days after he received notice of the court's Decision and Order, so it is properly considered

11   under Rule 59(e).

12       A motion for reconsideration under Rule 59(e) should only be granted when the court is

13   "presented with newly discovered evidence, committed clear error, or if there is an intervening

14   change in the controlling law." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (citing

15   *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)); *Allstate Ins. Co. v.*

16   *Heron*, 632 F.3d 1101, 1111 (9th Cir. 2011) (citing *McDowell v. Calderon*, 197 F.3d 1253, 1255

17   n.1 (9th Cir. 1999)) (explaining that district courts "enjoy[] considerable discretion in granting or

18   denying" motions to amend or alter under Rule 59(e)); *see also* CVLR 7(p)(1)(C). However,

19   Rule 59(e) motions "may *not* be used to raise arguments or present evidence for the first time

20   when they could reasonably have been raised in the litigation." *Kona Enters.*, 229 F.3d at 890

21   (emphasis in original).

22      **B. Analysis**

23       Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), "[a] prisoner in

24   custody under sentence . . . claiming the right to be released upon the ground that the sentence

was imposed in violation of the Constitution or laws of the United States, . . . or is otherwise

subject to collateral attack, may move the court which imposed the sentence to vacate, set aside

or correct the sentence." 28 U.S.C. § 2255(a). Such petition is subject to a one-year period of

limitation, which runs from the latest of four statutorily prescribed events. *See id.* § 2255(f).

Relevant here, Lopez's period began to run on October 3, 2022, "the date on which the judgment

of conviction becomes final," i.e., when the Supreme Court denied his petition for certiorari. *See*

*id.* § 2255(f)(1); *Clay v. United States*, 537 U.S. 522, 527 (2003) (holding that "[f]inality attaches

when the [Supreme Court] affirms a conviction on the merits . . . or denies a petition for a writ of

certiorari, or when the time for filing a certiorari petition expires," in the context of Section 2255

postconviction relief). Therefore, Lopez's last day to petition the court for relief under 28 U.S.C.

§ 2255 was October 3, 2023.

Lopez's Motion to Vacate was received on October 16, 2023. *See* Mot., ECF No. 101.

The court initially dismissed the Motion on the grounds that it was not filed by October 3, 2023.

*See* Decision & Order, ECF No. 102. However, Lopez argues in his Motion for Reconsideration

that the court incorrectly relied on October 16, 2023, for this determination because, under the

"prison mailbox rule," a prisoner's filings are deemed filed when they are delivered to prison

official for mailing. Mot. at 2, ECF No. 107; Def.'s Resp. at 1-2, ECF No. 111 (citing *Houston v.*

*Lack*, 487 U.S. 266, 276 (1988)). The Government agrees that, when applying the prison mailbox

rule, Lopez's Motion to Vacate was timely. Gov't Resp. at 2-4, ECF No. 114.

In *Houston v. Lack*, the Supreme Court articulated the prison mailbox rule in the context

of Federal Rule of Appellate Procedure 4(a)(1), holding that a prisoner's notice of appeal was

filed at the time he delivered it to the prison authorities for forwarding to the court clerk. 487

U.S. at 276. As cited by Lopez, this rule has also been applied in the context of pro se prisoners

who are challenging the constitutionality of their state court convictions through federal habeas

corpus petitions. *E.g.*, *Bulter v. Long*, 752 F.3d 1177, 1178 n.1 (9th Cir. 2014); *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010); *Melville v. Shinn*, 68 F.4th 1154, 1159 (9th Cir. 2023). The court agrees that if it applied the prison mailbox rule as announced in *Houston v. Lack*, Lopez's Motion to Vacate is considered timely.

However, this approach overlooks the procedural differences between the federal appellate rules and petitions under the AEDPA for postconviction relief. Here, the Rules Governing Section 2255 Proceedings in the United States District Courts ("Section 2255 Rules") control whether Lopez's Motion Under § 2255 was timely. *See United States v. Winkles*, 795 F.3d 1134, 1136 (9th Cir. 2015). Rule 3(d) codifies the prison mailbox rule, but it differs from the rule announced in *Houston* in at least one material way. Rule 3(d) states that:

> A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing. If an institution has a system designated for legal mail, the inmate must use that system to receive the benefit of this rule. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, either of which *must set forth the date of deposit and state that first-class postage has been prepaid*.

Section 2255 Rules, R. 3(d), 28 U.S.C. foll. § 2255 (emphasis added); *see also Winkles*, 795 F.3d at 1145-46. In other words, the declaration or notarized statement required by Rule 3(d) must include both (1) the date of deposit *and* (2) that first-class postage has been prepaid. *See Winkles*, 795 F.3d at 1146. These requirements "have evident value as a matter of policy." *Id.* First, "requiring an inmate to swear to the date he gave his filing to prison officials for mailing functions as a screening mechanism on false claims of timely mailing. It also creates a more readily confirmed or rebutted evidentiary record." *Id.* at 1146-47. Second, "the postage requirement also has value because, as one court reasoned, 'mail bearing a stamp gets going, but an unstamped document may linger.'" *Id.* at 1147 (quoting *United States v. Craig*, 368 F.3d 738, 740 (7th Cir. 2004)). The court may also consider "probative evidence" other than a signed

1  declaration to confirm that a petition was timely filed. *E.g.*, *Murillo v. United States*, No. C20-

2  0484JLR, 2020 WL 5747821, at *4-5 n.5 (W.D. Wash. Sept. 25, 2020) (citing *Winkles*, 795 F.3d

3  at 1146).

4         Here, Lopez's Motion to Vacate contains the following signed declaration:

5            I, declare (or certify, verify, or state) under penalty of perjury that the

6            forgoing is true and correct and that this Motion Under 28 U.S.C. § 2255
          was placed in the prison mailing system on Oct. 3, 2023.

7  Mot. at 11, ECF No. 101. Lopez's envelope had twenty Forever Stamps affixed to it, and the

8  U.S. Postal Service acknowledged that postage was paid on October 10, 2023. *See id.* at 26.

9         While Lopez's declaration addresses the first requirement of Rule 3(d), i.e., how he

10  deposited the filing in the prison mailing system on the last day of the one-year period to file, the

11  declaration does not address the second requirement of Rule 3(d), i.e., whether "first-class

12  postage has been prepaid." *See* Mot. at 11, ECF No. 101; Section 2255 Rules, R. 3(d). Even

13  when the court looks to the envelope for other "probative evidence" of this fact, there is no

14  definitive indication that the postage was prepaid on October 3, 2023. *Id.* at 26. Rather, the court

15  is only able to identify that the U.S. Postal Service marked postage paid on October 10, 2023,

16  and, potentially, that the prison mailing system forwarded Lopez's mailing to the U.S. Postal

17  Service on October 7, 2023. *See id.* Nonetheless, the trend among district courts in the Ninth

18  Circuit appears to be "resist[ing] such a rigid reading of Rule 3(d)" and looking to other

19  probative evidence of demonstrating a timely filing, such as postage affixed to the envelope.

20  *E.g.*, *Franklin v. United States*, Nos. SA CV 10-0995-DOC, SA CR 06-0166-DOC, 2015 WL

21  13265918, at *6 (C.D. Cal. Jan. 12, 2015); *United States v. Barboza-Lozano*, Nos. CV-18-04075-

22  PHX-JJT (DMF), CR-16-00942-02-PHX-JJT, 2019 WL 7484133, at *1 n.1 (D. Ariz. Nov. 1,

23  2019); *Velasquez v. Montgomery*, No. 2:16-cv-06937-MCS-MAA, 2020 WL 8450150, at *8 n.5

24  (C.D. Cal. Dec. 2, 2020), *adopted by* 2021 WL 71996 (C.D. Cal. Jan. 8, 2021); *Murillo*, 2020

1  WL 5747821, at *5 n.5. As such, the court finds that the postage affixed to Lopez's Motion to

2  Vacate provides sufficient evidence that he prepaid postage upon delivering his filing to the

3  prison mailing authorities. The other dates on the envelope likely indicate how the filing moved

4  through the prison mailing system and then through the U.S. Postal Service. At this point, other

5  than soliciting a revised declaration from Lopez, a declaration from a prison official, or

6  attempting to retrieve the prison mailing log from October 2023, other probative evidence of

7  postage being prepaid at the time of delivery is likely unavailable.

8        In a perfect world, Lopez would have provided a declaration or notarized statement under

9  penalty of perjury that he met both requirements under Rule 3(d). In that same world, the court

10  would have inquired into this shortcoming at the time of its original Decision and Order rather

11  than denying his Motion Under § 2255 by referring to October 16, 2023.

12        In short, Lopez's Motion for Reconsideration (ECF No. 107) is **GRANTED**.

13  Accordingly, Lopez's Motion to Vacate is timely and will be considered herein.

14  **III.**    **Motion to Vacate**

15        **A. Jurisdiction and Venue**

16        The court has subject matter jurisdiction over this action under 28 U.S.C. § 2255. *See* 28

17  U.S.C. § 1331. The action is also in the proper venue because the petition concerns Lopez's

18  conviction in this court. *See* 28 U.S.C. § 2255(a).

19        **B. Standard of Review**

20        A defendant seeking to collaterally attack his sentence under 28 U.S.C. § 2255 may only

21  do so "upon the ground that the sentence was imposed in violation of the Constitution or laws of

22  the United States, . . . or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A

23  sentence is "otherwise subject to collateral attack" if it "involves a fundamental defect that

24  inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178,

1   185 (1979).

2            Under Rule 4(b) of the Section 2255 Rules, "[t]he judge who received the motion must

3   properly examine it." Section 2255 Rules, R. 4(b). "In determining whether a hearing and

4   findings of fact and conclusions of law are required, '[t]he standard essentially is whether the

5   movant has made specific factual allegations that, if true, state a claim on which relief could be

6   granted.'" *United States v. Withers*, 638 F.3d 1055, 1062-63 (9th Cir. 2011) (quoting *United*

7   *States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)). "If it plainly appears from the motion,

8   any attached exhibits, and the record of prior proceedings that the moving party is not entitled to

9   relief, the judge must dismiss the motion and direct the court to notify the moving party." Section

10  2255 Rules, R. 4(b); *see also* 28 U.S.C. § 2255(b). The motion, files, and records of the case

11  must "conclusively show that the prisoner is entitled to no relief" to warrant dismissal on

12  preliminary review. *See Withers*, 638 F.3d at 1062 (quoting 28 U.S.C. § 2255(b)) (explaining

13  that a Section 2255 motion may be summarily dismissed only if "the allegations, when viewed

14  against the record, do not give rise to a claim for relief or are 'palpably incredible or patently

15  frivolous'"). "If the motion is not dismissed, the judge must order the United States attorney to

16  file an answer, motion, or other response within a fixed time, or to take other action the judge

17  may order." Section 2255 Rules, R. 4(b); *see also* 28 U.S.C. § 2255(b).

18           Lopez lists seven grounds for relief in his Motion to Vacate. *See* Mot., ECF No. 101.

19  Pursuant to Rule 4(b), the court conducts a preliminary review of these grounds to determine

20  whether any warrant dismissal. *See* Section 2255 Rules, R. 4(b), 28 U.S.C. foll. § 2255. As

21  explained below, the court dismisses Lopez's Motion to Vacate in its entirety.

22           **C.  Ground One: Sixth Amendment Ineffective Assistance of Counsel**

23           First, Lopez alleges four reasons why his counsel's performance was deficient:

24  (1) "Counsel failed to investigate matters critical for trial"; (2) "Counsel Failed to Challenge the

1    Venue"; (3) "Failure to suppress intercepted communications"; and (4) "Stipulation of validity of

2    Guam charge." *See* Mot. at 12-18, ECF No. 101. The court addresses each allegation in turn.

3            The Sixth Amendment guarantees that "in all criminal prosecutions, the accused shall

4    enjoy the right to . . . the Assistance of Counsel for his defense." U.S. Const. amend. VI. This

5    right to assistance of counsel is more aptly characterized as the right to *effective* assistance of

6    counsel at all "critical stage[s] of the prosecution." *See Strickland v. Washington*, 466 U.S. 668,

7    685 (1984); *Kirby v. Illinois*, 406 U.S. 682, 690 (1972). To prevail on a claim of ineffective

8    assistance of counsel, Lopez must ultimately prove (1) that his counsel's performance "fell

9    below an objective standard of reasonableness," and (2) that "there is a reasonable probability

10   that, but for counsel's unprofessional errors, the result of the proceeding would have been

11   different." *Strickland*, 466 U.S. at 687. "Under *Strickland*, a criminal defendant's counsel may be

12   deemed ineffective only if counsel's performance falls outside the 'wide range of reasonable

13   professional assistance.'" *Torres-Chavez v. Holder*, 567 F.3d 1096, 1100-01 (9th Cir. 2009)

14   (citing *Strickland*, 466 U.S. at 689). This standard is highly deferential, and there is a "strong

15   presumption that counsel's conduct falls within the wide range of reasonable professional

16   assistance." *Woods v. Sinclair*, 764 F.3d 1109, 1132 (9th Cir. 2014); *Strickland*, 466 U.S. at 689.

17   Nonetheless, the court may reject a claim for ineffective assistance of counsel for the failure to

18   show either element. *Strickland*, 466 U.S. at 697.

### i.    Failure to Investigate Matters Critical for Trial

20           First, Lopez alleges that his trial attorney, Jeffrey Moots, failed to investigate matters

21   critical for trial, including "evidence of claims of innocence," and "had he simply done his duty

22   to prepare for trial, the outcome had more than a reasonable probability of acquittal." *Id.* at 12.

23   Lopez then points to evidence that he believes should have been investigated:

24           (1)  Lopez's iPhone because it contains "intimate details of his life" that show

1  he "did not have the intent to sexually abuse a child";

2  (2) Witnesses other than Lopez, such as his military colleagues, because his
3  attorney could have "invoke[d] the Sixth Amendment 'compulsory
   process' to compel witnesses to testify" about his lack of intent to
4  commit the crime;

5  (3) FBI documents created by "FBI SA Kipp" because they would show that
   there was no "dirt" on Lopez;

6  (4) Lopez's Fitbit because it would show "that Lopez failed his Army
7  Physical Fitness Test (APFT) by not keeping up a minimum running
   pace" and would impeach testimony that he passed his fitness test;

8  (5) Lopez's mental health history because "[h]e made an emotional and
   irrational revenge plan against his ex-wife, and his actual intent was not
9  related to sexually abusing a child";

10  (6) Undercover operations compliance because "OSI's investigations or its
    agents' actions" were not compliant with law or protocol and should have
11  been challenged at trial;

12  (7) Vacant/condemned homes because Lopez knew that the homes were
    condemned and the testifying agent "perjured himself by stating that
13  families were living along the condemned street"; and

14  (8) Child support/divorce documents because they would show the martial
    controversy between Lopez and his wife, which would show his
15  "motivation and intent to pursue the 'Brit' scandal."

16  Mot. at 12-18, ECF No. 101.

17  Defense counsel "has a duty to make reasonable investigations or to make a reasonable

18  decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. As an

19  initial matter, the court notes that Lopez testified at trial in support of his *mens rea* defense. *E.g.*,

20  Tr. at 6-49, ECF No. 93. And on appeal, the Ninth Circuit explained:

21  The Government introduced reams of sexually explicit messages which
    Lopez sent to "Brit" after she repeatedly claimed to be thirteen years old.
22  Lopez referenced "Brit's" sexual inexperience by offering to teach her
    how to perform various sexual acts and continued to send her explicit
23  emails and obscene materials after receiving photographs from "Brit"
    depicting an underage girl. Throughout the communications, Lopez
24  expressed a fear of getting in trouble because "Brit" was underage.
    Investigating agents explained at trial that Lopez attempted to meet

"Brit" to engage in sexual acts and repeatedly solicited nude photographs from her.

*Lopez*, 4 F.4th at 718. Nonetheless, the jury disregarded such evidence given the strength of evidence presented by the Government. *See id.* at 728, 731 ("[T]here is no question that the Government proved at trial the same criminal behavior alleged in the indictment by adducing evidence that Lopez used online profiles to engage in lewd and predatory conversations in an attempt to engage in sexual relations with a person he believed to be an underage girl.").

Even assuming that counsel's performance fell below an objective standard of reasonableness by failing to investigate the evidence articulated by Lopez, the court is unconvinced that investigation into such matters would result in a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See id.* at 678. The critical point here is the strength of the Government's case in comparison to how the jury regarded Lopez's *mens rea* defense. Accordingly, the court finds that the record of this case conclusively shows that Lopez has failed to assert a cognizable claim for ineffective assistance of counsel on this ground.

### ii. Failure to Challenge the Venue

Second, Lopez claims that his counsel "had a duty to at least consider" challenging the venue of his case because "Guam is a small community," "[i]ts residents appear to all have close ties, particularly to the military base," and it "is especially prone to prejudice given the combination of strong feels and a disproportionately higher number of sex offenders on the island." Mot. at 17, ECF No. 101. Again, defense counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. Lopez has not identified, and the court has not found, authority supporting whether the failure to challenge the venue of his prosecution "fell below an

1    objective standard of reasonableness." And, as explained above, the strength of the

2    Government's case cuts against any "reasonable probability" that challenging venue would have

3    resulted in different outcome. Therefore, the court finds that Lopez's claim for ineffective

4    assistance of counsel fails on this ground.

5              **iii.  Failure to Suppress Intercepted Communications**

6        Third, Lopez claims that the agent who acted as "Brit" in his case "implicate[d] several

7    laws, including those involving the government's interception of communications." Mot. at 17,

8    ECF No. 101. He argues that the agent intercepted communications without a warrant and

9    conducted electronic surveillance without a warrant, which his counsel could have suppressed

10    under 18 U.S.C. § 2515. *Id.* at 17-18.

11        Contrary to Lopez's contention, 28 U.S.C. § 2515 does not cover the communications at

12    issue here. The wiretap statute is clear that "[i]t shall not be unlawful under this chapter for a

13    person acting under color of law to intercept a wire, oral, or electronic communication, where

14    such person *is a party* to the communication." 18 U.S.C. § 2511(2)(c) (emphasis added); *cf.*

15    *United States v. White*, 401 U.S. 745, 791 (1971) (Harlan, J. dissenting) ("[Section] 2511(2)(c)

16    exempts consensual and participant monitoring by law enforcement agents from the general

17    prohibitions against surveillance without prior judicial authorization and makes the fruits

18    admissible in court . . . ."). The undercover agent, acting as "Brit" was a party to the

19    communications with Lopez, and it cannot be said that such communications were made in

20    violation of the law. *See United States v. Johnson*, No. CR09-5703RBL, 2011 WL 13142510, at

21    *4 (W.D. Wash. June 21, 2011) ("Federal law authorizes audio and visual recording when one

22    party to the communication, such as an undercover agent or informant, consents to the

23    recording."); *cf. U.S. v. Little*, 753 F.2d 1420, 1434-35 (9th Cir. 1984) (holding that tape

24    recordings of conversations between IRS undercover agents and defendants were obtained

1   lawfully and admissible under Section 2511(2)(c)). Therefore, Lopez cannot now claim that his

2   counsel was ineffective by not attempting to suppress Lopez's communications with "Brit" under

3   Section 2515. The court cannot conclude that failure to argue an incorrect interpretation of law

4   fell below an objective standard of reasonableness. And even if defense counsel raised Lopez's

5   arguments, there is no reasonable probability that they would have resulted in a different

6   outcome. Thus, the court finds that Lopez's claim for ineffective assistance of counsel fails on

7   this ground.

8               **iv.  Stipulation of Validity of Guam Charge**

9        Fourth, Lopez claims that he was "originally . . . to be prosecuted by Guam authorities,"

10  but they "declined prosecution because the events took place . . . outside their jurisdiction." Mot.

11  at 18, ECF No. 101. Because of this, Lopez argues that his counsel provided ineffective

12  assistance by stipulating "to the § 2422(b) indictment alleging that there was an underlying

13  Guam offense" and by "fail[ing] to object to the indictment's presented underlying charge or to

14  the court not instructing the jury as to this element." *Id.*

15       As held on appeal, "a defendant *can* be convicted of attempted enticement pursuant to

16  Section 2422(b) even if the criminal laws of the relevant jurisdiction cover only completed sex

17  crimes with a minor." *Lopez*, 4 F.4th at 720 (emphasis added). Even more, "Guam could have

18  prosecuted an individual in Lopez's position for an attempt to engage in sexual penetration of a

19  minor based on substantial steps taken within the Territory of Guam." *Id.* at 725. Regardless, the

20  Ninth Circuit held that Section 2422(b) does not contain a predicate offense requirement, and the

21  federal government cannot be bound to prove elements that are not required for conviction under

22  the applicable criminal statute. *Id.* at 726. Taken further, "[w]hether the behavior in which Lopez

23  engaged could have been charged under one Guam offense or another is irrelevant to the

24  culpability of his conduct under federal law." *Id.* at 728.

Although this issue was conclusively resolved on appeal, Lopez does not assert sufficient reasons why his counsel's failure to object to the validity of the Guam charge fell below an objective standard of reasonableness. Even assuming defense counsel's "stipulat[ion] to the § 2422(b) indictment alleging that there was an underlying Guam offense" was "error that harmed Lopez at trial" or "prevented him from getting a favorable appellate standard," the court finds that there is no "reasonable probability" that the outcome of the proceedings would have been different if defense counsel did as Lopez described. Therefore, Lopez's ineffective assistance of counsel claim fails on this ground.

In sum, the court concludes that Lopez's ineffective assistance of counsel claims, as articulated in Ground One, fail to state cognizable grounds for relief and must be dismissed.

### D. Ground Two: Fifth and Sixth Amendment Violations

Next, Lopez alleges that the Government "violated his Sixth Amendment rights by interfering with compulsory process of witnesses for his benefit and Fifth Amendment right to choose to testify." Mot. at 19, ECF No. 101. The Government did so, he argues, by "Ltc. Castro" forbidding "Lopez's military comrades from speaking with him or his attorney." *Id.* Lopez states that Ltc. Castro did so to avoid further scandal on base before his potential promotion and for revenge for not providing information "against several ne'er do wells he met in jail in exchange for the government considering dropping the charges." *Id.* In turn, this "restricted Lopez from beneficial testimony that validated his claims that he pursued the offense communications only because of his desire to exit the military and to prevent his ex-wife from being able to obtain more money from him." *Id.* "As a secondary consequence, Lopez's lack of witnesses . . . meant that his defense hinged only on his words: it was him or no defense." *Id.*

The interplay between the Sixth Amendment right to compulsory process and the Fifth Amendment privilege against self-incrimination is complicated, particularly when the two rights

conflict. *E.g.*, *Woods v. Adams*, 631 F. Supp. 2d 1261, 1284 (C.D. Cal. 2009). Under the Fifth Amendment, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Under the Sixth Amendment, "the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor" in all criminal prosecutions. U.S. Const. amend. VI. Unlike cases where the two rights conflict, Lopez alleges that the Sixth Amendment violation caused his Fifth Amendment rights to be violated. *See* Mot. at 19, 25, ECF No. 101.

The Sixth Amendment encompasses "the right to offer the testimony of witnesses, and to compel their attendance, if necessary." *See Soo Park v. Thompson*, 851 F.3d 910, 919 (9th Cir. 2017) (quoting *Washington v. Texas*, 388 U.S. 14, 18-19 (1967)). The Government "violates due process when its conduct 'effectively drives a witness off the stand.'" *Id.* (quoting *Webb v. Texas*, 409 U.S. 95, 98 (1972)). The right to compulsory process is not absolute. "[E]ven where there may have been governmental misconduct, a criminal defendant cannot establish a violation of his compulsory process right unless he 'makes some plausible showing' of how the potential witness's 'testimony would have been both material and favorable to his defense.'" *Id.* (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982)); *see also Woods*, 631 F. Supp. 2d 1261, 1280 (C.D. Cal. 2009) ("[M]ore than the mere absence of testimony is necessary to establish a violation of the right.").

A Fifth Amendment claim requires that a defendant prove (1) that his testimony carried the risk of incrimination, and (2) that the penalty he suffered amounted to compulsion. *See United States v. Antelope*, 395 F.3d 1128, 1134 (9th Cir. 2005). There must be a "real and appreciable danger of self-incrimination"; a "remote, unlikely, or speculative" threat is insufficient." *Id.* (quoting *McCoy v. Comm'r*, 696 F.2d 1234, 1236 (9th Cir. 1983). To show compulsion, the government's purpose in imposing the penalty is key. *Id.* at 1137 (citing

1   *McKune v. Lile*, 536 U.S. 24, 48-54 (2002)). However, the Fifth Amendment privilege is not

2   absolute. A defendant who chooses to testify in his own defense at trial waives his Fifth

3   Amendment protection and may be impeached like any other witness. *E.g.*, *United States v.*

4   *Weightman v. Conway*, No. CV 03-549-S-MHW, 2005 WL 2367539, at *2 (D. Id. Sept. 27,

5   2005) (citing *Jenkins v. Anderson*, 447 U.S. 231, 235-36 (1980)).

6          On the record in this case, and the allegations in Lopez's Motion to Vacate, Lopez does

7   not sufficiently allege a Fifth or Sixth Amendment claim. Starting with the Sixth Amendment,

8   Lopez's allegations are founded only upon his speculation as to Ltc. Castro's motivations for

9   forbidding Lopez's military comrades from speaking with him or his attorney, he then concludes

10  that the Government was involved in this scheme. *See* Mot. at 19, ECF No. 101. Lopez then

11  states that this would validate his *mens rea* defense (i.e., "that he pursued the offense

12  communications only because of his desire to exit the military and to prevent his ex-wife from

13  being able to obtain more money from him") but given the weight of the evidence presented by

14  the Government, it is not plausible that the testimony would have been material to the success of

15  his defense. *See Valenzuela-Bernal*, 458 U.S. at 867-68.

16         Regarding Lopez's Fifth Amendment allegation, Lopez chose to testify on his own behalf

17  after considering the evidence presented by the Government. Given the court's finding that

18  Lopez has failed to sufficiently allege a Sixth Amendment violation, the court similarly cannot

19  find that such allegations compelled his testimony. Lopez voluntarily testified about his defense,

20  the jury was in a position to judge his credibility, and while there may have been other witnesses

21  or evidence that could support his credibility, there are no credible allegations that such evidence

22  was improperly prevented by the Government.

23         Therefore, the court finds that Lopez's allegations about the absence of his military

24  comrades' testimonies are insufficient to state a cognizable Fifth or Sixth Amendment violation,

1  and such claims must be dismissed.

2   **E.  Ground Three: Due Process Violation: "Individual" Under the Statutes**

3   In Ground Three, Lopez alleges that he was denied due process when he was convicted of

4  offenses that were "legally impossible" because they require "a mental state" that cannot be

5  achieved when "attempting to entice a fictional person is not covered by the plain language of

6  the statute." Mot. at 20, ECF No. 101. Lopez's reading of 18 U.S.C. §§ 1470 and 2422(b) is

7  contrary to law. Under both Section 1470 and Section 2422(b), it is immaterial whether the

8  "individual" who has not attained the relevant age is actually a minor, fictitious minor, or

9  undercover agent. *See United States v. Meek*, 366 F.3d 705, 717-18 (9th Cir. 2004) ("That the

10  individual turns out to be a decoy undercover officer does not vitiate the criminal conduct—

11  indeed, such sting operations are 'common practice.'"); *United States v. McCarron*, 30 F.4th

12  1157, 1165 (9th Cir. 2022) ("To the extent [the defendant] ascribes any significance to the fact

13  that Brit was not actually 'a person under 18 years of age,' he is misguided."); *see also Lopez*, 4

14  F.4th at 720 ("[A] defendant can be convicted of attempted enticement pursuant to Section

15  2422(b) based on communications with an adult undercover agent he believed to be a minor even

16  if the criminal laws of the relevant jurisdiction cover only completed sex crimes with a minor.").

17  Accordingly, it makes no difference that Lopez was interacting with an undercover agent

18  pretending to be minor for the purpose of his convictions under Sections 1470 and 2422(b).

19   Therefore, Lopez has failed to state a cognizable ground for relief, and his due process

20  claim in Ground Three must be dismissed.

21   **F.  Ground Four: Due Process Violation: Indictment Presented to the Jury**

22   In Ground Four, Lopez contends that he was deprived of due process when the

23  Government charged him with "a subset of a crime that involved a violation of a specific Guam

24  law" but did not prove that a violation of the local law occurred. Mot. at 22, ECF No. 101. Lopez

argues that the local crime under 9 GUAM CODE ANN. § 25.15(a)(1), became an element of the Section 2422(b) offense that the Government had to prove. He further states that not only did the Government not prove this element, but it is impossible to prove: "no Guam crime could happen; all the events took place on the military base." *Id.*

On direct appeal, Lopez challenged the sufficiency of the evidence supporting his attempted enticement conviction under Section 2422(b). *See Lopez*, 4 F.4th at 718. He argued, as he argues here, that the Government failed to prove "that the sexual activity in which he sought to entice 'Brit' to engage was 'sexual activity for which any person can be charged with a criminal offense." *Id.* Lopez asserted that the Government was required to prove, and the jury was required to find, that he "attempted to entice a minor to engage in sexual activity that would have violated a criminal offense for which he actually could have been prosecuted" because the Indictment cited to a specific Guam law. *Id.* In other words, Lopez argued that a charge under Section 2422(b) requires the "Government to charge a predicate offense and to prove Guam would have had jurisdiction to prosecute him for said offense." *Id.* at 179.

The Ninth Circuit ultimately held that Lopez forfeited this argument by failing to raise it to this court, but nonetheless affirmed the conviction as "it was not error, let alone plain error" to deny his motions for judgment of acquittal under Federal Rule of Criminal Procedure 26. *See id.* As a matter of first impression, the Ninth Circuit held:

> Lopez's reading of Section 2422(b) to require charging a specific predicate offense is inconsistent with the statute's text and how the statute has been interpreted. Instead, Section 2422(b)'s "sexual activity for which any person can be charged with a criminal offense" element required the Government to prove the defendant proposed sexual conduct that would have constituted any criminal offense in one or more relevant territorial jurisdictions.

*Id.* Further:

> We now join several other circuits in holding Section 2422(b) does not

1
2
3

> require the Government to allege a specific predicate offense or to prove that the relevant court would have had jurisdiction over the defendant for the commission of such offense, so long as the Government proved the defendant's proposed sexual conduct would have constituted "*a criminal offense*" under the laws of an applicable territorial jurisdiction.

4  *Id.* at 723.

5     Although the Ninth Circuit addressed the sufficiency of the evidence, and not a due

6  process claim, Lopez's contention that the Ninth Circuit's holding "violates Lopez's due process

7  only because the government had to prove the given specific Guam charge" is insufficient to

8  support his Motion to Vacate.[7] As the Ninth Circuit held, the Government did not charge a

9  subset of the statutory offense that had to be proven.

10     Therefore, Lopez fails to allege a cognizable ground for relief, and his due process claim

11  in Ground Four must be dismissed.

12  ### G. Ground Five: Violations of Federal Statutes

13     In Ground Five, Lopez asserts that "[Agent] Ring conducted the OSI investigation in

14  violation of the Electronic Communication Privacy Act and other laws." Mot. at 23, ECF No.

15  101. Lopez argues that Agent Ring's impersonation of "a person that does not exist, exhibiting a

16  persona" as a violation of 18 U.S.C. § 2511(1)(a) because he "endeavored to intercept private

17  communications" to get Lopez's email address and phone number. *Id.* He then argues that Agent

18  Ring had no probable cause and could not/did not get a warrant to intercept messages under 18

19  ----

20  [7] Ordinarily, when a defendant has raised a claim and has been given a full and fair opportunity to litigate it on direct appeal, that claim may not be used as a basis for a subsequent Section 2255 petition. *See United States v. Hayes*, 231 F.3d 1132, 1139 (9th Cir. 2000). Lopez did not raise this due process claim on appeal, so the court addresses it herein. Nonetheless, the Ninth Circuit's holding forecloses his challenge.

21

22  Relatedly, Lopez may not present claims in his § 2255 motion that could have been, but were not, raised on direct appeal. *E.g.*, *United States v. Dunham*, 767 F.2d 1395, 1397 (9th Cir. 1985). However, the United States must raise this procedural default in response to a Section 2255 motion, otherwise such argument may be waived. *See, e.g.*,

23  *United States v. Smith*, No. 1:13-cr-00194-DAD-BAM-1, 2020 WL 5366303, at *5 (E.D. Cal. Sept. 8, 2020) (citing *United States v. Guess*, 203 F.3d 1143, 1146 (9th Cir. 2000)). Accordingly, the court will not address the applicability of this doctrine herein.

24

1  U.S.C. § 2516. *Id.*[8] He also states that the law does not permit Ring from "acting under color of

2  law to impersonate others" so it was impossible for "Brit" "to give permission to allow the

3  interception." *Id.* "As a final note," Lopez contends that Ring violated federal regulations by

4  failing to comply with Craigslist's terms of service. *Id.* at 24.

5      As explained above, 18 U.S.C. § 2515 does not cover the communications at issue here.

6  That is because the wiretap statute makes clear that "[i]t shall not be unlawful under this chapter

7  for a person acting under color of law to intercept a wire, oral, or electronic communication,

8  where such person is a party to the communication." 18 U.S.C. § 2511(2)(c). This provision,

9  which applies equally to Sections 2515 and 2516, "exempts [the] consensual and participant

10  monitoring by law enforcement agents from the general prohibitions against surveillance without

11  prior judicial authorization and makes the fruits admissible in court." *White*, 401 U.S. at 791

12  (Harlan, J. dissenting). The undercover agent, acting as "Brit" was a party to the communications

13  with Lopez, and it cannot be said that such communications were made in violation of the law.

14  *See Johnson*, 2011 WL 13142510, at *4.

15      Lopez's contention that Ring violated federal regulations by failing to adhere to

16  Craigslist's terms of service is inappropriately supported by citations to Defense Federal

17  Acquisition Regulations and the Federal Acquisition Regulations System. Such regulations are

18  pertinent only to the "defense acquisition system" which "exist[] to manage the investments of

19  the United States in technologies, programs, and product support necessary to achieve the

20  national security strategy." *See* 48 C.F.R. § 201.101. These regulations are inapplicable to

21  Lopez's case and are not a basis to challenge his conviction under 28 U.S.C. § 2255.

22      Therefore, the court concludes that Lopez has failed to state a cognizable claim for relief,

23

24  [8] Lopez also cites to Executive Order 123333 as a source to define "electronic surveillance." Mot. at 23, ECF No. 101. This Executive Order concerns national intelligence and the National Security Council, it is inapplicable to the case here, and the court will not address it further. *See* Exec. Order No. 12,333.

1    and Ground Five must be dismissed.

2         **H. Ground Six: Brady Violations and Due Process**

3         In Ground Six, Lopez claims that the Government failed to turn over "the results of their

4    investigation, showing that Lopez had no history of suspect encounters with minors" "along with

5    any other favorable information." Mot. at 24, ECF No. 101. This, he argues, constituted a *Brady*

6    violation because such evidence would show that he no "history of malfeasance" and that his

7    "lack of predisposition was cohesive with his lack of intent." *Id.*

8         Under *Brady v. Maryland*, the Supreme Court held that due process requires the

9    prosecution to disclose evidence favorable to an accused person when such evidence is material

10    to guilty or punishment. 373 U.S. 83, 87 (1963). To prevail on a *Brady* claim, Lopez will have to

11    ultimately prove that (1) "the evidence at issue is favorable to the accused, either because it is

12    exculpatory, or because it is impeaching"; (2) "that evidence was suppressed by the [United

13    States], either willfully or inadvertently"; and (3) "prejudice ensued." *Woods v.* Sinclair, 764

14    F.3d 1109, 1127 (9th Cir. 2014) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)); *see*

15    *also Brady*, 373 U.S. at 87. The rule "applies only to 'favorable evidence rising to a material

16    level of importance.'" *Woods*, 764 F.3d at 1127 (quoting *Kyles v. Whitley*, 514 U.S. 419, 438

17    (1995)). Under this standard, even where evidence would have been favorable to the defendant,

18    there must be "a reasonable probability that, had the evidence been disclosed to the defense, the

19    result of the proceeding would have been different." *Strickler*, 527 U.S. at 280.

20         As an initial matter, the evidence presented in the Government's case-in-chief and

21    Lopez's trial testimony contradicts Lopez's claim that the Government's investigation resulted in

22    finding that he had no history of malfeasance or that he had a lack of predisposition. For

23    example, the Government introduced numerous messages between Lopez and "Brit" from its

24    investigation where, in one instance, Lopez told "Brit" that he was interested in "teaching [her]

some naughty adult stuff" after "trying to make sure [Brit is] who [she] says [she is] and not just

someone that can get [him] in trouble." Tr. at 58, ECF No. 92. Lopez later testified that he has a

history of responding to "Craigslist Casual Encounters" postings when he has "a lot of time on

[his] hands." Tr. at 7-8, ECF No. 93. Lopez also testified that, on a separate occasion, he inquired

about a receiving a naked massage and asked to pay for sex through a Craigslist posting—

something that he had done "multiple times." *Id.* at 10. Lopez also testified about his familiarity

with the tactics of sex offender sting operations because at least one other person in the military

had been caught for replying to a similar post. *Id.* at 12-15, 29-30; *see also Lopez*, 4 F.4th at 714.

Even assuming that any results of the Government's investigation would be favorable to Lopez,

the record does not support an argument that the Government willfully or inadvertently withheld

such evidence or, especially, that Lopez was prejudiced by such evidence not being provided to

him. *See Strickler*, 527 U.S. at 280-82; *cf. Lopez*, 4 F.4th at 718 (discussing strength of

Government's case and how "the jury likely would have voted to convict" even considering "the

extensive circumstantial evidence presented at trial of Lopez's belief that "Brit" was underage,

the probative value of the wrongfully excluded interrogation, and the mitigating effect of

Lopez's trial testimony on any prejudice resulting from admission of the interrogation

excerpts").

Considering the strength of the Government's case, and the fact that the jury disregarded

Lopez's testimony regarding his lack of intent, the court finds that Lopez fails to state a

cognizable *Brady* claim. Accordingly, Ground Six must be dismissed.

**I. Ground Seven: Fifth Amendment Violation: Impeding Right Not to Testify**

In Ground Seven, Lopez argues that his "Fifth Amendment right to choose not to testify

was impeded by the court's decision to show the misleading interrogation video and defense

counsel's failure to procure corroborating evidence and witnesses of Lopez's claims of

1  innocence." Mot. at 25, ECF No. 101. Lopez described how the admission of the interrogation

2  excerpts placed him in a position where "being honest as to his communications" with "Brit"

3  would "sound[] like concessions that he believed 'Brit' was real" and any attempt to "over

4  qualif[y] would undermine his appearance of honestly." *Id.* Lopez contends that if he "had either

5  the full interrogation video presented or his evidence and witnesses, his defense could have been

6  presented without a need for him to testify." *Id.*

7        On direct appeal of the evidentiary issue regarding the court's admission of the

8  interrogation video, the Ninth Circuit noted that Lopez argued, for the first time, that "showing

9  the interrogation excerpts at trial violated his Fifth Amendment right against self-

10  incrimination . . . even if the excerpts were admissible." *Lopez*, 4 F.4th at 717 n.2. In deciding

11  not to address the argument because it held that such statements excerpts should have been

12  excluded, the Ninth Circuit noted that "harmless error review would be equally applicable to

13  such violation." *Id.* And, "[t]aken together, the Government's evidence and Lopez's trial

14  testimony left the jury in substantially the same position to judge the credibility of Lopez's *mens*

15  *rea* defense as it would have been absent the evidentiary ruling." *Id.* at 718.

16        Although the Ninth Circuit addressed whether the court's erroneous evidentiary ruling

17  constituted harmless error, and not whether the evidence's admission impeded Lopez's Fifth

18  Amendment privilege against self-incrimination, the record in this case equally does not support

19  Lopez's arguments for relief. Lopez indicated to his counsel, and his counsel to the court outside

20  the presence of the jury, that it was "his desire to testify." *See* Tr. at 5, ECF No. 93. As discussed

21  above, Lopez did not invoke his Fifth Amendment privilege against self-incrimination and

22  voluntarily chose to testify. The Ninth Circuit acknowledged that the clips presented by the

23  Government were misleading, but his voluntary testimony let the jury in substantially the same

24  position to judge the credibility of his *mens rea* defense. *See Lopez*, 4 F.4th at 718. Even

assuming that admission of the interrogation excerpts was constitutional error and should have been introduced, the Government adduced sufficient evidence to convict Lopez of the charges. "Lopez admitted to sending the emails that the Government presented at trial and instead relied on the *mens rea* defense that the jury disregarded." *Id.* at 731. In light of the record as a whole, it cannot be said that this "had a substantial and injurious effect or influence" on Lopez given the weight of evidence presented by the Government. *See United States v. Montalvo*, 331 F.3d 1052, 1057 (9th Cir. 2003).

In consideration of record and Lopez's arguments, the court concludes that Lopez failed to allege a cognizable Fifth Amendment claim. Thus, Ground Seven must be dismissed.

To summarize, the court finds that Lopez's Motion to Vacate conclusively shows that he is not entitled to relief under 28 U.S.C. § 2255 for any of the seven grounds alleged in his Motion to Vacate. Therefore, Lopez's Motion to Vacate (ECF No. 101) is denied. The court also denies his request for appointment of counsel as moot.

**IV.    Certificate of Appealability**

A defendant cannot appeal a final order on his motion under 28 U.S.C. § 2255 unless the district court or court of appeals issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997) (interpreting "circuit justice or judge" to include district judges). The district court shall issue a certificate of appealability only when the defendant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires that the defendant show "a reasonable jurist would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Although Lopez may not appeal the district court's denial of a certificate of appealability, he may file a notice of appeal and request a certificate of appealability from the court of appeals

1  pursuant to Federal Rule of Appellate Procedure 22. *See Asrar*, 116 F.3d at 1270; Section 2255

2  Rules, R. 11(a). If so, the Clerk of Court must forward Lopez's case file, final order, and notice

3  of appeal to the Ninth Circuit.

4          Although Lopez did not request a certificate of appealability in his Motion to Vacate, the

5  court bases its decision on its analysis above. The court denied Lopez's Motion to Vacate on the

6  merits, finding that after a review of the record and the allegations in his motion, he has failed to

7  state a cognizable claim for relief. In this court's view, reasonable jurists would not debate this

8  court's ultimate findings. Lopez's arguments are belied by the record, by the Ninth Circuit's

9  holding on direct appeal, and by his failure to show how such claims would result in a reasonable

10  probability of a different outcome. Therefore, the court concludes that Lopez has failed to make

11  a "substantial showing" of the denial of a constitutional right. Accordingly, the court declines to

12  issue a certificate of appealability in this case.

13  **V.    Conclusion**

14          To summarize, Lopez's Motion for Reconsideration (ECF No. 107) is **GRANTED**. As

15  such, the court reconsidered his original Motion to Vacate (ECF No. 101). However, the court

16  found that Lopez is not entitled to relief on grounds alleged therein. Therefore, Lopez's Motion

17  to Vacate is **DENIED**.

18          The court further declines to issue a certificate of appealability. If Lopez nonetheless

19  chooses to appeal by requesting a certificate of appealability from the Ninth Circuit Court of

20  Appeals, the Clerk of Court must immediately forward Lopez's case file with the notice of

21  appeal and the final order thereto.

22          **SO ORDERED.**

23

24      **/s/ Frances M. Tydingco-Gatewood**
                              **Chief Judge**
                              **Dated: Mar 10, 2025**